**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>Defendant. | Civil Action No.: 6:23-cv-00682<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("FCS") files this complaint against Peloton Interactive, Inc. ("Peloton" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action to stop Defendant's infringement of one or more claims of the following United States Patents issued by the United States Patent and Trademark Office ("USPTO") (collectively, the "Asserted Patents"), copies of which are attached hereto as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F** and **Exhibit G**, respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 6,549,583 | Optimum Phase Error Metric for OFDM Pilot Tone Tracking in Wireless LAN |
| B. | 6,633,616 | OFDM Pilot Tone Tracking for Wireless LAN |
| C. | 7,058,040 | Channel Interference Reduction |
| D. | 7,260,153 | Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels |
| E. | 7,656,845 | Channel Interference Reduction |
| F. | 7,742,388 | Packet Generation Systems and Methods |
| G. | 8,005,053 | Channel Interference Reduction |

2.     Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.     Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.     On information and belief, Defendant is a corporation organized under the laws of the State of Delaware.

5.     On information and belief, Defendant has its principal place of business located at 441 Ninth Avenue, Sixth Floor, New York, New York, 10001.

6.     Defendant may be served through its registered agent for service in Delaware: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

7.     FCS repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

8.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because it has maintained an established and regular place of business in this District and has committed acts of patent infringement in this District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).  *See* **Figure 1** below.



**Figure 1[1]**

10.     Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

11.     Specifically, Defendant intends to do and do business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, and offers

---

[1] Source:  Google Maps

its services, including those accused of infringement here, to customers and potential customers located in Texas, including in the Western District of Texas.

12.    Defendant maintains a regular and established place of business in this District, including, but not limited to, a facility at the following address: 11701 Domain Blvd., Austin, Texas, 78758.  *See* Figure 1 above.

13.    Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

## THE ASSERTED PATENTS AND ACCUSED PRODUCTS

14.    FCS repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

15.    Defendant uses, causes to be used, provides, supplies, or distributes one or more computing devices, including, but not limited to, the Bike, Bike+, Tread, Tread+, Row, and Guide devices ("Computing Devices"), (collectively, the "Accused Products").  ***See* Exhibit H.**

16.    On information and belief, the Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth and IEEE 802.11, and various subsections thereof, including, but not limited to, 802.11ac, 802.11b, and 802.11n.

17.    On information and belief, the wireless communications perform and/or implemented by the Accused Products, among other things, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

18.    Defendant was notified that the Accused Products infringe the Asserted Patents in

April of 2023.

19.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

20.     On information and belief, Defendant provides support to its customers, employees, partners, or contractors, in the form of at least webpages and manuals, to utilize the Accused Products in an infringing manner. *See* **Exhibit I**.

### COUNT I:    INFRINGEMENT OF U.S. PATENT NO. 6,549,583

21.     FCS repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

22.     The USPTO duly issued U.S. Patent No. 6,549,583 (the "'583 patent") on April 15, 2003, after full and fair examination of Application No. 09/790,429 which was filed February 21, 2001.  *See* **Ex. A** at A-1.

23.     FCS owns all substantial rights, interest, and title in and to the '583 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

24.     The claims of the '583 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

25.     The written description of the '583 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '583 patent.

27.    Defendant has directly infringed one or more claims of the '583 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.

28.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '583 patent.  For example, Defendant, using the Accused Products, performs a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver.  The method includes determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; and estimating an aggregate phase error of a subsequent OFDM data symbol relative to the pilot reference points using complex signal measurements corresponding to each of the plurality of pilots of the subsequent OFDM data symbol and the pilot reference points; wherein the estimating step comprises performing a maximum likelihood-based estimation using the complex signal measurements corresponding to each of the plurality of pilots of the subsequent OFDM data symbol and the pilot reference points.

29.    More specifically, and as just one example of infringement, Defendant's conduct has comprised using the Accused Products to perform wireless communication according to techniques for modern OFDM-based receivers when utilizing the IEEE 802.11ac *et. seq.* protocol. IEEE 802.11ac is a very high throughput (VHT) orthogonal frequency division multiplexing (OFDM) system.  IEEE 802.11ac performs pilot phase error estimation.  Defendant performs wireless communication according to the 802.11ac when using the Accused Products.  802.11ac determines pilot reference points corresponding to a plurality of pilots of a VHLTF field which is in the preamble of an OFDM waveform, and LTE uses CSI reference signals (CSI-RS) of an

OFDM waveform. The 802.11ac receiver equalizer of the Accused Products estimates the aggregate phase error across all streams and the LTE receiver equalizer of the Accused Products estimates the aggregate phase error across all streams.

| | | |
|---|---|---|
| Connections | • WiFi 802.11 a/b/g/n/ac<br>• ANT+ wireless<br>• Bluetooth® 4.0<br>• 100 Mbps Ethernet. | • WiFi 802.11 a/b/g/n/ac - 2.4GHz & 5GHz<br>• ANT+ wireless<br>• Bluetooth® 5.0<br>• 100 Mbps - USB-C to Ethernet Adapter ONLY (not included)<br>• Apple® Gymkit. |

Source: **Exhibit J**[2]

30.    FCS has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II:   INFRINGEMENT OF U.S. PATENT NO. 6,633,616**

31.    FCS repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

32.    The USPTO duly issued U.S. Patent No. 6,633,616 (the "'616 patent") on October 14, 2003, after full and fair examination of Application No. 09/935,081 which was filed August 21, 2001.  *See* **Ex. B** at B-1.

33.    FCS owns all substantial rights, interest, and title in and to the '616 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

---

[2]    https://support.onepeloton.com/hc/en-us/articles/360042990472-Peloton-Bike-and-Bike-Dimensions-Specifications-and-Power-Requirements#h_01FHG5H285QT7PK68JG6JHMG9G

34.     The claims of the '616 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

35.     The written description of the '616 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

36.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '616 patent.

37.     Defendant has directly infringed one or more claims of the '616 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.

38.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 12 of the '616 patent.  For example, Defendant, using the Accused Products, performs a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver.  The method includes determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; processing, in a parallel path to the determining step, the OFDM preamble waveform with a fast Fourier transform; determining a phase error estimate of a subsequent OFDM symbol relative to the pilot reference points; and processing, in the parallel path to the determining step, the subsequent OFDM symbol with the fast Fourier transform;

wherein the determining the phase error estimate step is completed prior to the completion of the processing the subsequent OFDM symbol with the fast Fourier transform in the parallel path.

39.    More specifically, and as just one example of infringement, Defendant's conduct has comprised using the Accused Products to perform wireless communication according to techniques for modern OFDM-based receivers when utilizing one or both of the IEEE 802.11ac *et. seq.* protocol.  IEEE 802.11ac is a very high throughput (VHT) orthogonal frequency division multiplexing (OFDM) system.  IEEE 802.11ac performs pilot phase error estimation.  Defendant performs wireless communication according to the 802.11ac protocol when using the Accused Products.  802.11ac determines pilot reference points corresponding to a plurality of pilots of a VHLTF field which is in the preamble of an OFDM waveform.  The 802.11ac receiver equalizer of the Accused Products estimates the aggregate phase error across all streams.   In parallel with determining pilot reference points, the OFDM preamble waveform is processed.  The 802.11ac receiver architecture processes OFDM preambles with FFT in parallel with determining pilot reference points (e.g., for MIMO channel estimation). The pilot reference points are identical on all streams, thereby allowing the receiver to estimate phase error on the channel for the subsequent OFDM symbols.  The phase error estimation is completed prior to completion of the processing subsequent OFDM symbol with FFT, because the phase error estimation is used to correct errors in the transmission.  The 802.11ac architecture performs MIMO channel estimation (phase error estimation) prior to completion of the OFDM symbol processing.

| Connections | • WiFi 802.11 a/b/g/n/ac<br>• ANT+ wireless<br>• Bluetooth® 4.0<br>• 100 Mbps Ethernet. | • WiFi 802.11 a/b/g/n/ac - 2.4GHz & 5GHz<br>• ANT+ wireless<br>• Bluetooth® 5.0<br>• 100 Mbps - USB-C to Ethernet Adapter ONLY (not included)<br>• Apple® Gymkit. |

Source: **Ex. J**

40.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III:  INFRINGEMENT OF U.S. PATENT NO. 7,058,040**

41.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

42.     The USPTO duly issued U.S. Patent No. 7,058,040 (the "'040 patent") on June 6, 2006, after full and fair examination of Application No. 09/962,718 which was filed September 21, 2001. *See* **Ex. C** at C-1.

43.     FCS owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

44.     The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting data transmission methods.

45.     The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

46.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

47.     Defendant has directly infringed and continues to directly infringe the '040 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.

48.     Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent.  For example, Defendant, using the Accused Products, performs a method for data transmission over first and second media that overlap in frequency.  The method includes computing one or more time division multiple access (TDMA) time-slot channels to be shared between the first and second media for data transmission; allocating one or more time-slot channels to the first medium for data transmission; allocating one or more of the remaining time-slot channels to the second medium for data transmission; and dynamically adjusting a number of timeslot channels assigned to one of the first and second media during the data transmission to remain within limits of a desired level of service.

49.     More specifically, and as just one example of infringement, Defendant's conduct has comprised using the Accused Products to perform a method for data transmission over first and second media that overlap in frequency because the Accused Products communicate according to the 802.11b and Bluetooth protocols which involve transmission over first and second media that

overlap in frequency when using the Accused Products. As just one example, the method includes (a) computing one or more time division multiple access (TDMA) time-slot channels to be shared between the first and second media for data transmission, *e.g.,* 802.15.2-2003 sets forth the mechanism for Alternating Wireless Medium Access (AWMA) to reduce interference between 802.11 and 802.15 signals. In AWMA, the beacon period of an 802.11b frame is shared between first media (WLAN) and second media (WPAN) for data transmission; (b) allocating one or more time-slot channels to the first medium for data transmission, *e.g.,* the Accused Products allocate a time-slot channel (WLAN interval to the first medium (802.11b) for data transmission); (c) allocating one or more of the remaining time-slot channels to the second medium for data transmission, *e.g.,* the Accused Products allocate a time-slot channel (WPAN interval) to the second medium (802.15) for data transmission; and (d) dynamically adjusting a number of time-slot channels assigned to one of the first and second media during the data transmission to remain within limits of a desired level of service, *e.g.,* the 802.11b beacon frame includes a Medium Sharing Element (MSE) which defines the length of the time-slot channels (WLAN, WPAN, and Guard). The Offset, Length and Guard intervals can be dynamically adjusted to modify the number of time-slot channels assigned to WLAN and WPAN data transmission to remain within limits of a desired level of service.

| Connections | • WiFi 802.11 a/b/g/n/ac<br>• ANT+ wireless<br>• Bluetooth® 4.0<br>• 100 Mbps Ethernet. | • WiFi 802.11 a/b/g/n/ac - 2.4GHz & 5GHz<br>• ANT+ wireless<br>• Bluetooth® 5.0<br>• 100 Mbps - USB-C to Ethernet Adapter ONLY (not included)<br>• Apple® Gymkit. |
|---|---|---|

Source: **Ex. J**

50.     Since at least receiving Fleet Connect's letter in April of 2023, Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '040 patent by inducing others to directly infringe said claims.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '040 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '040 patent, including, for example, claim 1.  Such steps by Defendant has included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '040 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '040 patent.  Defendant's inducement is ongoing. *See* **Ex. I**.

51.     Since at least receiving Fleet Connect's letter in April of 2023, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '040 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '040 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '040 patent, including, for example,

claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '040 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.  *See* **Ex. I**.

52.    Defendant had knowledge of the '040 patent at least as of April of 2023.

53.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

54.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

55.    Defendant's infringement of the '040 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

56.    FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

57.    FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '040 patent.  Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT IV:  INFRINGEMENT OF U.S. PATENT NO. 7,260,153

58.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

59.    The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21, 2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.  *See* **Ex. D** at D-1.

60.    FCS owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

61.    The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

62.    The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63.    Defendant has directly infringed the '153 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.

64.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent.  For example, Defendant, using the Accused Products, performs a method for evaluating a channel of a multiple-input multiple-output ("MIMO") wireless communication system allowing two or more communication devices with multiple radiating elements to transmit parallel data sub-streams which defines a channel matrix metric of cross-talk signal-to-noise ("SNR") for the subs-streams, estimates the

channel matrix metric, performs a singular value decomposition ("SVD") of the channel matrix metric estimate to calculate estimated channel singular values, and using the channel matrix metric and estimated channel singular values to calculate a crosstalk measure for the sub-streams.

65.     More specifically, and as just one example of infringement, Defendant's conduct has comprised using the Accused Products, which are adapted by Defendant for wireless communications using multiple communication protocols, including 802.11n.    802.11n implements beamforming in a MIMO system. LTE supports single and multi-user MIMO transmissions.  A MIMO communication system comprises at least two communication devices (*e.g.*, STA A, STA B, BS and/or UE) having a plurality of radiating elements (antennas) for the parallel transmission of data sub-streams.   802.11n implements beamforming that defines a channel matrix metric (Hk) that comprises a predefined function (equation 20-62) of channel matrix singular values for each of the data sub-streams.  MIMO systems utilized within the context of LTE transmission can define a channel matrix metric that comprises a predefined function of channel matrix singular values for each of the data sub-streams. Each of the predefined functions provides a measure of cross-talk signal to noise ratio (SNR) for sub-streams.   To implement implicit beamforming, the beamformer obtains an estimated channel matrix.

| Connections | • WiFi 802.11 a/b/g/n/ac<br>• ANT+ wireless<br>• Bluetooth® 4.0<br>• 100 Mbps Ethernet. | • WiFi 802.11 a/b/g/n/ac - 2.4GHz & 5GHz<br>• ANT+ wireless<br>• Bluetooth® 5.0<br>• 100 Mbps - USB-C to Ethernet Adapter ONLY (not included)<br>• Apple® Gymkit. |
|---|---|---|

Source: **Ex. J**

66.     Since at least receiving Fleet Connect's letter in April of 2023, Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '153 patent by

inducing others to directly infringe said claims. Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '153 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '153 patent, including, for example, claim 1. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '153 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '153 patent. Defendant's inducement is ongoing. *See* **Ex. I**.

67.    Since at least receiving Fleet Connect's letter in April of 2023, Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '153 patent. Defendant has contributed to the direct infringement of the '153 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '153 patent, including, for example, claim 1 of the '153 patent. The special features constitute a material part of the invention of one or more of the claims of the '153 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See* **Ex. I**.

68.    Defendant had knowledge of the '153 patent at least as of April of 2023.

69.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of FCS's patent rights.

70.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

71.    Defendant's direct infringement of the '153 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

72.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '153 patent.

73.    FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

74.    FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '153 patent.  Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V:   INFRINGEMENT OF U.S. PATENT NO. 7,656,845

75.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

76.    The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2,

2010 after full and fair examination of Application No. 11/402,172 which was filed on April 11, 2006. *See* **Ex. E** at E-1.. A Certificate of Correction was issued on November 30, 2010. *See id.* at E-13.

77.    FCS owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

78.    The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

79.    The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

80.    Defendant has directly infringed the '845 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.

81.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 12 of the '845 patent.  For example, the Accused Products used by Defendant provide a system comprising a processor, a first transceiver configured to communicate *via* a first medium, a second transceiver configured to communicate *via* a second medium, wherein at least one of the first transceiver and the second transceiver is configured to retry transmission of a packet at a lower rate if a prior transmission of the packet is

not acknowledged, an allocation unit configured to dynamically allocate data channels to one of the first medium and the second medium based upon a desired level of service.

| | | |
|---|---|---|
| Hardware | • 2.0 GHz MediaTek MT8173 quad-core processor.<br>• 2 GB RAM.<br>• 16 GB internal flash storage.<br>• Peloton Cycle data connector. | • 2.5 GHz Qualcomm QCS605 processor.<br>• 4 GB RAM<br>• 16 GB internal flash storage.<br>• Peloton Cycle Data Connector - USB-C<br>• USB-C Charging Port for Devices |
| Connections | • WiFi 802.11 a/b/g/n/ac<br>• ANT+ wireless<br>• Bluetooth® 4.0<br>• 100 Mbps Ethernet. | • WiFi 802.11 a/b/g/n/ac - 2.4GHz & 5GHz<br>• ANT+ wireless<br>• Bluetooth® 5.0<br>• 100 Mbps - USB-C to Ethernet Adapter ONLY (not included)<br>• Apple® Gymkit. |

Source: **Ex. J**

82.     More specifically, and as just one example of infringement, Defendant's conduct has comprised using the Accused Products allocates at least one of a plurality of data channels to a first medium for data transmission *via* a wireless device and allocates at least one remaining data channel of the plurality of data channels to a second medium for data transmission via the wireless device.  Further, the time slot channels allocation is dynamic, and can be dynamically adjusted during the data transmission based on various criteria, such as data traffic volume, QoS requirements, etc. to remain within limits of a desired level of service.  802.15.2-2003 defines a Collaborative Coexistence Mechanism ("allocation unit") with an AWMA Medium Free Generation that is configured to dynamically allocate data channels to one of the 802.11 Device and the 802.15.1 Device based upon a desired level of service.  The Accused Products allocate a

time-slot channel (WLAN interval) to the first medium (802.11b) for data transmission and a different time-slot channel (WPAN interval) to the second medium (802.15.1). The 802.11b beacon frame includes a Medium Sharing Element (MSE) which defines the length of the time-slot channels (WLAN, WPAN, and Guard). The Offset, Length and Guard intervals can be dynamically adjusted to modify the number of time-slot channels assigned to WLAN and WPAN data transmission to remain within limits of a desired level of service.

83.    Since at least receiving Fleet Connect's letter in April of 2023, Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '845 patent by inducing others to directly infringe said claims. Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '845 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '845 patent, including, for example, claim 12. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '845 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '845 patent. Defendant's inducement is ongoing. *See* **Ex. I**.

84.    Since at least receiving Fleet Connect's letter in April of 2023, Defendant has also

indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '845 patent. Defendant has contributed to the direct infringement of the '845 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '845 patent, including, for example, claim 12 of the '845 patent. The special features constitute a material part of the invention of one or more of the claims of the '845 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See* **Ex. I**.

85.    Defendant had knowledge of the '845 patent at least April of 2023.

86.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of FCS's patent rights.

87.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

88.    Defendant's direct infringement of the '845 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

89.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '845 patent.

90.    FCS has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

91.    FCS has suffered irreparable harm, through its loss of market share and goodwill, for

which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '845 patent.  Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VI:   INFRINGEMENT OF U.S. PATENT NO. 7,742,388

92.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

93.    The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665 which was filed July 20, 2005. *See* **Ex. F** at F-1.

94.    FCS owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

95.    The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

96.    The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

97.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

98.    Defendant has directly infringed and continues to directly infringe one or more claims of the '388 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.

99.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent.  For example, Defendant performs a method including generating a packet with a size corresponding to a protocol used for a network transmission, wherein the packet comprises a preamble having a first training symbol and a second training symbol.  The method further includes increasing the size of the packet by adding subcarriers to the second training symbol of the packet to produce an extended packet, wherein a quantity of subcarriers of the second training symbol is greater than a quantity of subcarriers of the first training symbol; and transmitting the extended packet from an antenna.

100.    More specifically, and as just one example of infringement, Defendant's conduct has comprised using the Accused Products, which are adapted for wireless communications using 802.11n.  The Accused Products generate a packet (or "frame") with a size ("LENGTH") corresponding to a protocol (e.g., 802.11n) used for network transmission. The packet (or "frame") comprises a preamble ("PLCP Preamble") having a first training symbol ("Short Training Sequence" or "STS") in HT-STF field and a second training symbol ("Long Training Sequence" or "LTS") in HT-LTF fields.  The Accused Products increase the size of the packet by adding subcarriers to the second training symbol ("Reference Signal") to produce an extended packet. The quantity of subcarriers of the second training symbol ("Reference Signal") is greater than a quantity of subcarriers of the first training symbol ("Synchronization Signals").  Likewise, when

utilizing the 802.11 protocols, the Accused Products increase the size of the packet by adding subcarriers to the second training symbol ("LTS") to produce an extended packet. The quantity of subcarriers of the second training symbol ("LTS") is greater than a quantity of subcarriers of the first training symbol ("STS"). The Accused Products receive the extended packet transmitted via network and include antennas for transmitting the extended packet.

| Connections | • WiFi 802.11 a/b/g/n/ac<br>• ANT+ wireless<br>• Bluetooth® 4.0<br>• 100 Mbps Ethernet. | • WiFi 802.11 a/b/g/n/ac -<br>  2.4GHz & 5GHz<br>• ANT+ wireless<br>• Bluetooth® 5.0<br>• 100 Mbps - USB-C to Ethernet<br>  Adapter ONLY (not included)<br>• Apple® Gymkit. |

Source: **Ex. J**

101.    Since at least receiving Fleet Connect's letter in April of 2023, Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '388 patent by inducing others to directly infringe said claims. Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1. Such steps by Defendant has included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has been performing these steps, which constitute induced

infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent. Defendant's inducement is ongoing. *See* **Ex. I**.

102.    Since at least receiving Fleet Connect's letter in April of 2023, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '388 patent. Defendant has contributed and continues to contribute to the direct infringement of the '388 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See* **Ex. I**.

103.    Defendant had knowledge of the '388 patent at least as of April of 2023.

104.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

105.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

106.    Defendant's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

107.    FCS has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to FCS in an amount that compensates it for such infringements,

which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

108.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '388 patent.  Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT VII:  INFRINGEMENT OF U.S. PATENT NO. 8,005,053**

109.     FCS repeats and re-alleges the allegations in Paragraphs 1-46 as though fully set forth in their entirety.

110.     The USPTO duly issued U.S. Patent No. 8,005,053 (the "'053 patent") on August 23, 2011, after full and fair examination of Application No. 12/696,760, which was filed on January 29, 2010.  *See* **Ex. G** at G-1.  A Certificate of Correction was issued on February 14, 2012.  *See id.* at G-14.

111.     FCS owns all substantial rights, interest, and title in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

112.     The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

113.     The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

114.    Defendant has directly infringed the '053 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.

115.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 10 of the '053 patent. For example, Defendant performs a method comprising a communication device storing data encoded for a plurality of different wireless protocols, the communication device including a plurality of wireless transceivers, each of which is configured to transmit data according to a corresponding one of the plurality of different wireless protocols where the communication device selects one of the plurality of different wireless protocols and encodes data of an unselected one of the plurality of different wireless protocols into the selected wireless protocol, and transmits the encoded data using the one of the plurality of wireless transceivers corresponding to the selected wireless protocol.

116.    More specifically, and as just one example of infringement, Defendant's conduct has comprised using the Accused Products, which are adapted for wireless communications using Wi-Fi and Bluetooth.  The Accused Products ("communication device") are equipped with multiple radio transceivers. The multiple radio transceivers include Wi-Fi/Bluetooth transceiver ("plurality of wireless transceivers"). The UE including the Wi-Fi/Bluetooth transceiver communicates data using the 802.11 protocol or 802.15.1 ("wireless protocols"). Also, the UE stores data encoded for a plurality of different wireless protocols.  For example, the ANDSF assist the UE to use operator defined inter-system routing policies or rules to discover and select the most preferable access technology such as cellular or WLAN ("selecting one of the plurality of different wireless

protocols") for data communication.  When using Wi-Fi and Bluetooth, the Accused Products are configured to encode data for the unselected protocol (e.g., Bluetooth) into data for the selected protocol (e.g., the WLAN ). Before data transmission, the UE would encode the data of the wireless protocol for the unselected transceiver (i.e., Wi-Fi) into data of the wireless protocol for the selected transceiver (i.e., Wi-Fi or LTE).

| Hardware | • 2.0 GHz MediaTek MT8173 quad-core processor.<br>• 2 GB RAM.<br>• 16 GB internal flash storage.<br>• Peloton Cycle data connector. | • 2.5 GHz Qualcomm QCS605 processor.<br>• 4 GB RAM<br>• 16 GB internal flash storage.<br>• Peloton Cycle Data Connector - USB-C<br>• USB-C Charging Port for Devices |
|---|---|---|

Source: **Ex. J**

| Connections | • WiFi 802.11 a/b/g/n/ac<br>• ANT+ wireless<br>• Bluetooth® 4.0<br>• 100 Mbps Ethernet. | • WiFi 802.11 a/b/g/n/ac - 2.4GHz & 5GHz<br>• ANT+ wireless<br>• Bluetooth® 5.0<br>• 100 Mbps - USB-C to Ethernet Adapter ONLY (not included)<br>• Apple® Gymkit. |
|---|---|---|

Source: **Ex. J**

117.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

118.    FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

119.    FCS hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

120.    FCS requests that the Court find in its favor and against Defendant, and that the Court grant FCS the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '040 patent, the '153 patent, the '845 patent, and the '388 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c. Judgment that Defendant account for and pay to FCS all damages to and costs incurred by FCS because of Defendant's infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringements of the '040 patent, the '153 patent, the '845 patent, and the '388 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award FCS its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>September 21, 2023</u>  Respectfully submitted,

          By: <u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088)*
Jonathan R. Miller (GA 507179)*
Travis E. Lynch (GA 162373)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (470) 840-9505, -9517, -9514
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff **FLEET CONNECT SOLUTIONS LLC***

         *Admitted to the Western District of Texas

<u>**Exhibits List**</u>
A. U.S. Patent No. 6,549,583
B. U.S. Patent No. 6,633,616
C. U.S. Patent No. 7,058,040
D. U.S. Patent No. 7,260,153
E. U.S. Patent No. 7,656,845
F. U.S. Patent No. 7,742,388
G. U.S. Patent No. 8,005,053
H. Webpage: https://www.onepeloton.com/
I. Webpage: https://support.onepeloton.com/hc/en-us
J. Webpage: Peloton Bike and Bike+ Dimensions, Specifications, and Power Requirements